IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LONNY BRITTNER, *Plaintiff/Appellant*,

*v.*

MARY ANN LANZILOTTA, *Defendant/Appellee*.

No. 1 CA-CV 18-0088
FILED 3-12-2019

Appeal from the Superior Court in Maricopa County
No. CV 2017-094921
The Honorable David K. Udall, Judge

**AFFIRMED**

APPEARANCES

Lonny Brittner, Chandler
*Plaintiff/Appellant*

Renaud Cook Drury Mesaros PA, Phoenix
By Michael D. Wolver, Karl J. Gruse, Steven G. Mesaros
*Counsel for Defendant/Appellee*

**OPINION**

Judge Jennifer B. Campbell delivered the opinion of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

**C A M P B E L L**, Judge:

¶1   Lonny Brittner appeals the superior court's dismissal of his amended complaint. Because Dr. Mary Ann Lanzilotta is entitled to judicial immunity as the court-appointed therapeutic interventionist ("TI") in Brittner's family court matter, we affirm.

## BACKGROUND

¶2   Brittner filed a civil action against Lanzilotta for intentional infliction of emotional distress, abuse of power, breach of fiduciary duty, and breach of contract after she resigned from her role as a court-appointed TI in his dissolution matter. In that proceeding, Brittner sought joint legal decision-making and equal parenting time of his children. The family court appointed Dr. Daniel Christiano as a custody evaluator. Christiano recommended the family see a TI. The parties provided the family court with a stipulated agreement to appoint Lanzilotta, and the court appointed her. Pursuant to the order, Lanzilotta was appointed to rehabilitate relationships between Brittner and the minor children, establish "rules for [the] exchange of [the] children in order to enhance safety and health in the family," make referrals for therapy as necessary, and facilitate conflict resolution.[1] In his amended complaint, Brittner acknowledged that Lanzilotta was appointed by court order and that the court relied on Lanzilotta's recommendations in issuing its final decree.[2]

¶3   Lanzilotta moved to dismiss the complaint under Arizona Rule of Civil Procedure 12(b)(6), arguing she was entitled to judicial immunity as a court-appointed TI. The court dismissed the complaint with prejudice. Brittner timely appealed from the resulting final judgment. *See* Ariz. R. Civ. P. 54(c).

---

[1]   Brittner did not include the entire family court order in his amended complaint; on appeal, Lanzilotta asks this court to take judicial notice of the remainder of the order. *See State v. McGuire*, 124 Ariz. 64, 66 (App. 1978) ("An appellate court can take judicial notice of any matter of which the trial court may take judicial notice, even if the trial court was never asked to do so."). In our discretion and because we resolve this issue based on the record before us, we deny Lanzilotta's request.

[2]   For example, Brittner averred that the custody orders contained "therapeutic supervised dinner visits with the minor children *as recommended by* the therapeutic interventionist." (Emphasis added.)

**DISCUSSION**

**¶4**　　　　We review the dismissal of a claim under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). "When adjudicating a Rule 12(b)(6) motion to dismiss, Arizona courts look only to the pleading itself and consider the well-pled factual allegations contained therein." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). We also "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Id.* We will affirm the dismissal if, as a matter of law, the plaintiff is not "entitled to relief under any interpretation of the facts susceptible of proof." *Fed. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998).

**¶5**　　　　Brittner argues Lanzilotta is not entitled to judicial immunity because she was hired to provide therapeutic services to the parties, and not as an expert to assist the court, relying in part on *Paul E. v. Courtney F.*, 244 Ariz. 46, 56-57, ¶ 32 (App. 2018) (review granted in part Nov. 20, 2018). Brittner, however, admits that Lanzilotta was appointed by the court. He also acknowledges the court relied on Lanzilotta's recommendations when making the final custody determination.

**¶6**　　　　Judicial immunity protects judges from civil liability for judicial acts performed in the exercise of their judicial functions. *In re Alexander*, 232 Ariz. 1, 11, ¶ 41 (2013). "Judicial immunity protects a non-judicial officer performing a function pursuant to a court directive related to the judicial process." *Lavit v. Superior Court*, 173 Ariz. 96, 99 (App. 1992) (citing *Acevedo ex rel Acevedo v. Pima Cty. Adult Prob. Dep't*, 142 Ariz. 319, 321 (1984)). Absolute judicial immunity has been extended to "certain other court officials who perform functions integral to the judicial process," including court-appointed psychologists and psychiatrists who assist the court. *Id.* (citing *Acevedo*, 142 Ariz. at 321). The existence of judicial immunity is a question of law we review de novo. *Widoff v. Wiens*, 202 Ariz. 383, 385-86, ¶ 8 (App. 2002). Whether absolute immunity protects a nonjudicial officer hinges on "the nature of the function performed, not on the identity of the actor." *Lavit*, 173 Ariz. at 99.

**¶7**　　　　Here, the court appointed Lanzilotta to provide therapeutic services *and* to give recommendations to the family court regarding "rules for [the] exchange of [the] children in order to enhance safety and health in the family" and referrals for therapy, which the court ultimately relied on in issuing its final order. Therapeutic services in this matter are incidental to the court's purpose—Lanzilotta was appointed to provide the court information and make recommendations to assist in a custody

determination. To formulate her expert opinion, therapeutic sessions were necessary to gather and evaluate the family dynamics and challenges to various proposed custody arrangements. Thus, Lanzilotta is a court-appointed therapist who performed functions integral to the judicial process.

¶8 Brittner's reliance on *Paul E.* is misplaced because the court-appointed therapist there was not ordered to report to the court. 244 Ariz. at 56, ¶ 31. The therapist's role was *not* to provide the court with information to resolve disputes, *id.* at 51, ¶ 13; rather, the court appointed the therapist to aid the family in a treating capacity, *id.* at 56, ¶ 31. *See* Ariz. Rev. Stat. § 25-405(B) (allowing the court to "seek the advice of a professional . . . whether or not employed by the court on a regular basis").

¶9 While the trial court couched the therapist's appointment in terms of § 25-405(B) language, we noted that the therapist's appointment was essentially an order for therapy, and "[a] treating therapist . . . performs a nonjudicial function that does not justify immunity." *Id.* at 57, ¶¶ 31-32. This court ultimately concluded that the therapist in *Paul E.* was not entitled to judicial immunity because the trial court expressly ordered that she continue in the role of a privately retained therapist, rather than an advisor to the court. *Id.* at 56, ¶ 31. Necessarily, the expert must be formulating an opinion about an issue currently pending before the court to advise the court. To invoke § 25-405(B) and appoint an expert to advise the court, there must be a pending motion, scheduled review hearing, or some other unresolved proceeding before the court. *See id.* at 57, ¶ 33 (applying same principle to the court's appointment of a gender expert).

¶10 Brittner argues that not all of the services provided by Dr. Lanzilotta should be cloaked in immunity. Brittner cites *Lavit* for the proposition that judicial immunity is not afforded to a nonjudicial officer who works exclusively for one party or who performs ministerial activities that are not part of the clinical and reporting function. *See Lavit*, 173 Ariz. at 101. But we do not parcel out therapeutic service from evaluation and reporting to the court nor do we limit immunity only for services related to the judicial process. To do so is neither practical nor possible. Here, therapy sessions were not separate from the evaluation leading to an expert opinion; the sessions are the observation and information gathering that enable the expert to formulate her opinion.

¶11 Looking solely at the facts alleged in the amended complaint, Lanzilotta was appointed to provide therapeutic services and make recommendations to the court. Brittner did not allege that Lanzilotta

4

worked exclusively for one party or that his causes of action against her were based on "ministerial activities" unrelated to the formulation of her expert opinion. Rather, he alleged that Lanzilotta's work "in the Family Action" was deficient: she caused harm to his family, she "has a Duty of Care to both [him] and [his] minor children in the Family Action," she owes him and "each one of his children in the Family Action" a standard of care, and he and his children "in the Family Action relied on that Standard of Care." The facts and causes of action alleged in the complaint are all derived from Lanzilotta's work as a court-appointed TI. Judicial immunity for a court-appointed therapist is appropriate. The therapist cannot serve two masters—her obligation is ultimately to the court.

¶12　　　　Lanzilotta acted as a nonjudicial officer when she performed a court ordered function by aiding the court in making its final custody order. Judicial immunity applies.

## CONCLUSION

¶13　　　　For the foregoing reasons, we affirm the superior court's grant of the motion to dismiss.



AMY M. WOOD • Clerk of the Court
FILED:  AA